## EAMES *v.* KAISER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 125. Argued and submitted December 16, 1891. — Decided January 11, 1892.

C. & Co. commenced suit against K. in Texas and caused his property to be attached on the ground that he was about to convert it or a part of it into money for the purpose of placing it beyond the reach of his creditors. K. sued C. & Co. to recover damages for the wrongful issue and levy of those attachments. On the trial of the latter case, proof was made tending to show fraud on the part of K. by putting his property into notes and placing them beyond the reach of his creditors, and, among other things he testified as a witness in his own behalf, that on the day of the levy or the next day a large amount owed to him was put into negotiable notes. On cross-examination he was asked what he had done with the notes. Plaintiff's counsel objected, and the objection was sustained. *Held,* that this was error.

THE court stated the case as follows:

This action was originally commenced in the District Court of Tarrant County, Texas, by Samuel Kaiser against H. R.

Claflin & Co., alleged to be a firm composed of plaintiffs in error and H. B. Claflin, and L. Levinson & Co., another firm, composed of L., Michael, and Max Levinson, all averred to be citizens of New York, to recover damages for the wrongful issue and levy of two writs of attachment against Kaiser, one in favor of H. B. Claflin & Co., and the other in favor of L. Levinson & Co. These attachment suits were commenced in the Circuit Court, and the affidavits upon which the writs issued alleged that Kaiser "was about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors."

A citation was served by copy, with a certified copy of the petition, by the delivery thereof to a member of each of the defendant firms in New York on July 17 and 18, 1883, under arts. 1230 and 1234 of the Revised Civil Statutes of Texas. Sayles's Tex. Civ. Stats. vol. 1, p. 418.

September 20, 1883, the defendants filed a plea to the jurisdiction and also moved to quash the process; and with said plea and the motion to quash, filed general and special demurrers and a general denial. On the same day, defendants filed petition and bond for the removal of the suit to the Circuit Court of the United States, and it was accordingly removed on the 21st of September. The original attachment suits of Claflin & Co. and L. Levinson & Co. were pending in the Circuit Court, and in the case commenced by Claflin & Co., Kaiser had pleaded his damages in reconvention, and after this suit was removed into the Circuit Court, Claflin & Co. moved that Kaiser be required to elect which suit for damages he would prosecute, and the motion being granted, Kaiser elected to prosecute this independent action. On the 21st of January, 1884, Kaiser moved the court to quash the plea of Claflin & Co. and Levinson & Co. to the jurisdiction, and strike out their motion to quash, and on the 28th of that month the motion was sustained as to Claflin & Co. and overruled as to Levinson & Co., the court being of opinion that the plea and motion had been waived by Claflin & Co.'s motion to require plaintiff to elect; and thereupon the plea to the jurisdiction was quashed, and the motion to set aside the service was stricken out, as to

Claflin & Co. Thereafter Claflin & Co. filed an amended answer containing demurrers and a general and special denial. Kaiser demurred in his turn and denied the averments of the amended answer by a supplemental petition.

The cause, having been tried, resulted in a verdict for the plaintiff, assessing his damages at $20,057.23, principal, and interest at the rate of 8 per cent per annum from November 17, 1882, being $8293.49, making a total of $28,350.72; and judgment was entered upon the verdict. A motion for a new trial was made and overruled.

The bill of exceptions stated, among other things, "that on the trial of the above cause the plaintiff Kaiser, being upon the stand as a witness for himself, and having testified that his stock on July 1, 1882, was of the value, at cost, of 22,807 dollars, and that he bought in July and August, 1882, 51,747 dollars' worth of additional goods; having also testified that from July 1 to November 17, 1882, the latter being the date of the levy of attachments upon his merchandise, he had sold at retail 12,000 dollars' worth of goods; that he had sold at wholesale to Sapowski Bros., whose credit in New York was not so good as Kaiser's, 33,000 dollars' worth of goods, at wholesale; to Keersky, 5162 dollars' worth; to May, at wholesale, 1207 dollars' worth; that on the day before his stock of merchandise was attached the said Sapowski Bros. owed him 13,815 dollars, plaintiff having drawn on him for large sums in favor of other creditors, and that said indebtedness was put in the shape of negotiable notes on the day said attachment was levied, or on the next day, was then, on cross-examination by defendants' counsel, asked what he had done with said notes; to this question the plaintiff's counsel objected on the ground that what had transpired after said attachment was levied was immaterial and irrelevant; this objection was sustained by the court and the defendants excepted."

Other exceptions were also taken not material to be stated here.

*Mr. M. L. Crawford* and *Mr. Sawnie Robertson*, for plaintiffs in error, submitted on their brief.

*Mr. A. H. Garland* for defendant in error.   *Mr. H. J. May* was with him on the brief.

Mr. Chief Justice Fuller delivered the opinion of the court.

The affidavit on which the attachment writ in favor of Claflin & Co. issued, averred that Kaiser was "about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors," and this action was predicated upon the falsity of that averment.

The record discloses that proof was adduced upon the trial tending to show an intent on Kaiser's part, at the time of the suing out and levy of the attachment, to defraud his creditors by secreting his property, by putting it into the shape of notes, and by fraudulently placing them beyond the reach of his creditors; and it also appears from the evidence in chief of Kaiser, as a witness in his own behalf, that on the day of the levy of the attachment, or the next day, an amount of $13,815, owed to him, "was put in the shape of negotiable notes." The Circuit Court refused to allow Kaiser to be asked on cross-examination what he did with these notes. In this ruling there was error. Upon the issue involved, the defendants were entitled to a wide latitude in cross-examining the party charged with fraudulent conversion when testifying for himself. If the particular indebtedness to Kaiser was turned into notes, and the notes were converted into money before the attachment issued, or simultaneously, that fact sustained the charge of the conversion of the property into money, and with the other evidence justified the inference that this was for the purpose of placing it beyond the reach of his creditors. Defendants were not called upon in propounding the question to the witness to state what they expected to prove by him, which it would have been ordinarily quite impossible for them to do, but inasmuch as he had testified in his own favor that the notes were obtained at or about the time of the attachment, the defendants were entitled to push the inquiry further and elicit from the witness all the circumstances surrounding the obtaining and the final disposition of that paper.

Indeed as the evidence tended to show an intent on Kaiser's part, at the time of the suing out of the attachment, to defraud his creditors by putting his property into the shape of notes and placing them beyond their reach, proof of Kaiser's acts of a similar nature, occurring immediately after the attachment writ issued, would have been admissible if in casual relation with what the whole evidence showed was one transaction. Of course, this would not be so as to independent and isolated action after the issue of the writ, but when happening in immediate connection with what preceded, and as part of one whole, the evidence would be admissible; and we are clear that, tested by the record before us, the question was legitimate and proper on cross-examination, and the objection should not have been sustained.

*The judgment is therefore reversed and the cause remanded to the Circuit Court, with a direction to grant a new trial.*

MR. JUSTICE BLATCHFORD took no part in the decision of this case.