JACOB SONNENTHEIL V. TEXAS GUARANTY AND
TRUST COMPANY ET AL.

No. 707.

1. **Pleading—Deed of Trust—Proof Required by General Denial.**—Plaintiff sued for the wrongful seizure of certain goods, alleging possession and title in himself, but not setting out the nature of his title. Defendant pleaded not guilty and specially, that plaintiff's title was solely by virtue of a preferential deed of trust to him as trustee, which was void, because made to hinder and delay unpreferred creditors, and because it had been altered after its delivery. *Held,* that the answer attacked plaintiff's title only in the respects mentioned; that his proof of possession met the requirements of the general denial, and that it did not devolve upon him to prove the delivery of the trust deed, and that any one of the beneficiaries therein had accepted prior to the seizure.

2. **Attachment Bond—Proof of Liability of Sureties.**—Where there was evidence that defendants had, as sureties, executed an attachment bond to the officer having the writ, to indemnify him against all damages arising from the levy thereof, this was sufficient to justify the submission to the jury of the question whether defendants had induced or procured the making of the levy in the manner it was made and upon the specific property involved so as to become liable therefor.

3. **Trust Deed With Preferences—Notice to Preferred Creditors of the Fraudulent Intent.**—In order to avoid a trust deed preferring certain creditors, there must exist not only the fraudulent intent on the part of the maker to hinder, delay, or defraud other creditors, but also notice of such intent on the part of the creditors for whose benefit it was made, and the rights, under the trust deed, of preferred creditors who have accepted without such notice will not be affected by notice of the fraud on the part of other creditors therein secured.

4. **Same—Fraud Against Creditors—Intent to Hinder and Delay—Charge of Court.**—Instructions to the effect that the mere fact that a deed made to prefer creditors does hinder or delay other creditors does not avoid the conveyance, but that an intent to hinder, delay, or defraud creditors does avoid it, is objectionable as being too abstract, and as not sufficiently explaining the character of the acts or results which are to be considered unlawful hindrances or delays.

5. **Same.**—A charge that an insolvent debtor has the right to prefer one or more creditors over others, "and the mere fact that such preference is given will not avoid the instrument made for that purpose, though such insolvency was known at the time to the preferred creditors, and they also knew that the effect and intention of such instrument was to hinder, delay, and defeat a portion of the maker's creditors in order to give a preference to those protected by the instrument," is misleading and properly refused.

6. **Same—Debt With Personal Security—Acceptance by Surety.**—The fact that a debt secured by deed of trust is also secured by personal indorsement does not affect the rights of its owner to the benefits of the deed, and an acceptance of the deed by such indorser or surety will be sufficient to give it effect as such debt, although the surety be not mentioned in the deed.

7. **Same—Evidence of Fraud—Subsequent Acts.**—Where an issue is, whether a preferential deed of trust was made to defraud the unpreferred creditors of its makers, the acts and transactions of the parties tending to show such purpose, even though subsequent to the delivery of the deed, may be given in evidence; and notice of such fraud on the part of the beneficiaries therein may be shown by other and different facts.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Scott, Levi & Smith* and *Willie, Campbell & Ballinger*, for appellants.

1. Freiberg, Klein & Co. were authorized, under the law of this State, to execute a deed of trust preferring bona fide creditors, and such an instrument was not void for the mere reason that it hindered, delayed, or even defeated the claims of creditors not secured thereby, and was intended to have that effect.

2. Freiberg, Klein & Co. having the lawful right to execute such deed, their act in so doing could not become unlawful by reason of the fact that it may have been done through a motive or with an intent not friendly to all creditors.

3. A hindrance or delay which does not operate as a fraud upon other creditors is not that prohibited by law, and a lien to secure a bona fide debt is valid, even though the debtor gave it with the intent to secure to the favored creditor an advantage over other creditors, and thus to hinder, delay, or even defeat the collection of some debts.

4. The paragraph of the charge made the subject of the seventh assignment of error, and indeed the whole charge taken together, shows that the court intended to distinguish between an intent to defraud and an intent to hinder or delay, and led the jury to believe that an intent to hinder or delay, whether fraudulent or not, would vitiate the deed, which was error.

5. The charges complained of in the above assignments were calculated to confuse the jury and leave them without means of distinguishing between an intent to hinder or delay in the execution of the deed of trust, and an intent that it should have its natural effect, which was to hinder and delay the unsecured creditors.

6. The instructions given to the jury, and the refusal of those asked by appellant's counsel, made it unimportant whether the secured creditors, or either of them, had any notice whatever of any fraudulent intent on the part of Freiberg, Klein & Co. in making said deed of trust.

Authorities in support of the foregoing propositions: Ellis v. Valentine, 65 Texas, 532; Lewy v. Fischl, 65 Texas, 311; Greenleve, Block & Co. v. Blum, 59 Texas, 126; Allen v. Carpenter, 66 Texas, 138; Bailey v. Mills, 27 Texas, 434; Howell Bros. v. Mars, 82 Texas, 493; Krauss Haas, 25 S. W. Rep., 1025; same case, 86 Texas, 687; Rider v. Hunt, 25 S. W. Rep., 314; Wallis v. Adoue, 76 Texas, 120; Mixon v. Legrand, 21 S. W. Rep., 772; Simmons v. Hardware Co., 77 Texas, 131; Rev. Stats., art. 2296; Woods v. Shaw, 29 Ill., 445; Woeland v. Kimberlin, 6 B. Mon., 608; Hall v. Arnold, 15 Barb., 599; Paulsen v. Wood, 58 N. W. Rep., 794; Barmaster v. Phelps, 51 N. W. Rep., 417; same case, 81 Wis., 256; Jones v. Gorce, 56 N. W. Rep., 390; Cooper v. Bank (Ala.), 11 South. Rep., 160; Lillienthal v. Price, 25 Pac. Rep., 1078; Gregory v. Harrington, 4 Vt., 241; Dana v. Stanford, 10 Cal., 769; Wheaton v. Nevills, 19 Cal., 46; Chase v. Walters, 28 Iowa, 460; Kohn v. Clement & Watson, 58 Iowa, 589; Sessions v. Roth, 30 Conn., 15; Foster v. Hall,

12 Pick., 99; Bridge v. Eggleston, 14 Mass., 249; Funk v. Staats, 24 Ill., 532; Bank v. Carter, 38 Pa. St., 446.

7. An insolvent debtor may prefer by deed of trust one or more of his creditors, notwithstanding the debt or debts thus preferred are already secured by the indorsement of a third party. A deed of trust thus given will be sustained, though given for the purpose of delaying, hindering, or defrauding other creditors, if such purpose is not known to such secured creditors, though it may have been known to the indorser. Byrd v. Perry, 26 S. W. Rep., 749; Kruse v. Prindle, 8 Ore., 162; Strong v. Skinner, 4 Barb., 546; Burr. on Assign., sec. 116; Bump on Fraud. Con., 387; Worland v. Kimberlin, 6 B. Mon., 608.

8. The appellees contributed to the seizure of the property in the possession of the trustee, and thereby rendered themselves liable as joint trespassers with the marshal in making such seizure. Cabell v. Shoe Co., 81 Texas, 108; Richardson v. Jankofsky, 23 S. W. Rep., 815; Cool. on Torts, p. 150; Drake on Attach., sec. 194a; Stone v. Hooker, 9 Cow., 154; Herring v. Hoppock, 15 N. Y., 409, 410.

*Lovejoy & Sampson, Hume & Kleberg,* and *Labatt & Labatt,* for appellees.—1. There being no evidence that any of the beneficiaries named in the trust deed accepted it, that instrument was ineffective against the attachment of the creditor, the Moerlein Company, and no judgment could have been rendered save that from which the appeal is taken. Milling Co. v. Eaton, Guinan & Co., 86 Texas, 401; Wallis v. Taylor, 67 Texas, 431; Schneider v. McCoulsky, 6 Texas Civ. App., 501–504; Murphy v. Milling Co., 26 S. W. Rep., 854; Hardware Co. v. Spencer, 29 S. W. Rep., 45; 1 Cobbey Chatt. Mort., sec. 413, and cases cited.

2. If it be conceded that ignorance on the part of beneficiaries, or any of them, in a trust deed of the fraudulent intent of the grantor in making the deed saves the instrument from invalidity in so far as said beneficiaries, or such of them as are so ignorant, are concerned, the concession does not avail the appellant here; for such rule can not apply to a case like the one at bar, where, by a conspiracy entered into or secret understanding had by and between the grantors and a third person who is their heavy indorser, the insolvent grantors are to and do continue business upon their credit until such time as their failure may best serve the interest of such indorser, and upon arrival of that time culminate the conspiracy by a trust deed, not naming him, but advised and demanded by him, and really intended for his benefit, although disguised by recitation of nominal, uninformed, and nonaccepting beneficiaries, used as a cover to conceal the true design and give surface fairness to the deed. Mixon v. Symonds, 2 Texas Civ. App., 629; Baldwin v. Peet, 22 Texas, 714; Eicks v. Copeland, 53 Texas, 590; Carlton v. Baldwin, 22 Texas, 724; Gregg & Son v. Cleveland, 82 Texas, 187; Gallagher v. Goldfrank, 75 Texas, 565; Haas v.

Kraus, 75 Texas, 106; Green v. Drug Co., 1 Texas Civ. App., 634; Big. on Frauds, 306, 307; Wait Fraud. Con., secs. 11, 14, 241, 331–333; Robinson v. Elliott, 22 Wall., 523; Wait Fraud. Con., sec. 335; Hill v. Agnew, 12 Fed. Rep., 283; Jackson v. Harby, 65 Texas, 715; Baylor v. Brown, 3 Texas Civ. App., 178; Bump Fraud. Con., 582, 583; Linn v. Wright, 16 Texas, 34; 2 Big. on Frauds, 337, 338, citing German v. Cooper, 72 Pa. St., 32; Wait Fraud. Con., sec. 249, citing Rothschilds v. Rome, 44 Vt., 389, 393.

3.    Although presented in many and varying forms, the cardinal proposition of appellant is that the court erred in resting the invalidity of the trust deed upon the fraudulent intent of the grantors, notwithstanding the absence of such intent in the beneficiaries.    We affirm the negative of that proposition.    Rev. Stats., art. 2465; Baldwin v. Peet, 22 Texas, 710; Brown v. Cactus Hedge Co., 64 Texas, 396, cited in 8 Am. and Eng. Encyc. of Law, 756; Simon v. Ashe, 1 Texas Civ. App., 208; Boot Co. v. Johnston, 24 S. W. Rep., 585.

WILLIAMS, Associate Justice.—Appellant sued the Texas Guaranty and Trust Company, J. P. Alvey, and A. J. Walker, for damages, alleging that on the 23rd day of December, 1892, at the instigation of defendants, a United States marshal, in the execution of a writ of attachment issued from the Federal court in favor of the Christian Moerlein Brewing Company against the firm of Freiberg, Klein & Co., had seized and taken from plaintiff's possession certain goods, of which plaintiff "had good title and was in full possession," and had, under authority of such writ, converted same to the use of the plaintiff therein.

Defendant pleaded not guilty, and alleged specially that plaintiff had no title to the goods for the value of which suit was brought other than such as was conferred upon him by a deed of trust executed by Freiberg, Klein & Co. to him on the 16th day of December, 1892, purporting to convey the goods to him for the purpose of securing certain recited debts of said firm, other than that claimed by the plaintiffs in the writ of attachment under which the seizure had been made; that such deed was, as to the creditors of Freiberg, Klein & Co., omitted therefrom, and as to all persons and for any purpose, void, and interposed no legal obstruction to the levy of the writ of attachment against the makers thereof.    The answer then proceeded to state the reasons why it was claimed the deed was void, which were, in brief, that it had been altered, after its execution and delivery, by interlineation and erasure of material provisions; and that it was executed by Freiberg, Klein & Co. and accepted by plaintiff when the former were insolvent, with intent to hinder, delay, and defraud their creditors, which intent was known to the beneficiaries, the secured creditors.

Upon these issues the cause was tried below, and verdict and judgment were rendered for defendants, from which this appeal is prosecuted.

Appellant seeks to reverse the judgment, upon the admission of evidence and the giving of charges affecting the issue of fraud; and appellees contend that the judgment should be affirmed, without reference to any question as to the correctness of those rulings, for the reason that, aside from the issue of fraud in the deed of trust, plaintiff showed no cause of action. It will be well to first dispose of the contentions on which appellees base this proposition. The first is, that there is no evidence whatever that, prior to the levy of the attachment against Freiberg, Klein & Co., any of the creditors named as the beneficiaries of the deed of trust had accepted or in any way become parties to it.

Plaintiff alleged, and there was evidence that he was, in possession of the goods when the seizure was made. He did not, in his pleadings, set out the character of his claim so as to require him to develop in his evidence the title under which he held. His allegation that he had the title and possession was supported, prima facie at least, by proof of possession, and on such proof he was entitled to recover, unless it was met and rebutted by evidence, on the part of defendant, admissible under the pleadings. If the question as to the admissibility of proof were unaffected by the character of the defensive pleadings, it may be true that, when defendants met such evidence of possession in the plaintiff by the proof that the goods had belonged to Freiberg, Klein & Co. before plaintiff got them, and showed their right as attaching creditors of that firm, the plaintiff, in order to maintain his suit, would have been required to exhibit a title from Freiberg, Klein & Co. superior to the right of the attaching creditor, and hence, when he introduced the deed under which he claimed, would have been required to show not only its execution and delivery to him, but an acceptance of it by some beneficiary prior to the levy of the attachment. But under a general denial, in a case like this, a defendant can not attack the title of a plaintiff in possession, or put him on proof of other title than possession, but the defendant is restricted to disproof of the alleged trespass. Carter & Hunt v. Wallace, 2 Texas, 206. Hence, without special pleading, defendants could not have exacted of plaintiff proof of any fact but the trespass, and could not have attacked plaintiff's title or proved title in themselves.

The answer, most elaborately and skillfully drawn, did set forth the title under which plaintiff claimed, pointed out its alleged defects, and stated the facts out of which arose defendant's right to assail it. The plea admitted that Sonnentheil held under the deed of trust, but asserted that it had been altered after delivery so as to avoid it, and that it was fraudulent as against unpreferred creditors of Freiberg, Klein & Co. No intimation is given of a claim that it had not been accepted, or was incomplete as a contract between Freiberg, Klein & Co. and the beneficiaries. We think that this answer should be construed as assailing the plaintiff's title only on the grounds thus stated, and that it should be held to have put him upon notice to come prepared with proofs to sustain it only at the points at which it was as-

sailed.  Under these issues, proof on the part of plaintiffs of the execution, delivery, and acceptance of the deed was rendered unnecessary in making out his title to the property, and the questions presented were whether or not the deed was to be avoided upon proof of the averments made by defendants.  No question was made in the court below as to the necessity of an acceptance by beneficiaries in order to make the deed effective, but there was some evidence which came out incidentally, in the investigation of other questions, indicating that there may have been an acceptance by one, at least, of the named beneficiaries before the attachment was levied.  The court in its charge submitted no question as to acceptance, but assumed and instructed that the deed was valid and conferred title upon plaintiff unless avoided by proof of fraud.  To affirm the judgment upon this contention of appellees, though errors be found in the rulings of the court in the submission of the issues upon which the verdict was made to depend such as would otherwise require a reversal, would be not only to reverse the action of the court below in plaintiff's favor, treating the deed as valid unless avoided by fraud, but to determine the case against him upon an issue of fact that has not been tried or raised in that court.

The next contention of appellees is, that the evidence adduced in the trial below was legally insufficient to connect them with the levy of the attachment, and to fix upon them liability for its consequences, and hence no recovery could have been had against them, whether such levy was justifiable or not.  It was shown that the attachment in favor of the Christian Moerlein Brewing Company was issued upon the affidavit of Werner, the agent of that company, charging that Freiberg, Klein & Co., had disposed of their property for the purpose of defrauding their creditors; that the marshal declined to make the levy unless a bond to indemnify him should be given; that thereupon a bond was prepared and signed by the brewing company through Werner, its agent, as principal, and the defendants, as sureties, in the sum of $60,000, reciting that he had levied on certain goods and chattels, with a blank space left for their description under the writ of attachment referred to, and conditioned that the signers would indemnify, save, and keep harmless the marshal from all suits, damages, and judgments that he might incur, or which might be rendered against him in consequence of the levy and writ.  This bond was, by the agent of plaintiff in attachment, delivered to the marshal; the property was pointed out by such agent, and was levied on in consequence of the giving of the bond.  The bond was signed by defendants and delivered to such agent for the purpose expressed in it, upon a telegraphic request from the brewing company and its bank at Cincinnati, containing also a promise of indemnity to defendants.  Defendant Walker testified, that he signed the bond at the request of his codefendant, Alvey, who had signed it individually as well as for the guaranty company as its agent, and supposed it was to indemnify the

marshal in levying the attachment on the stock of Freiberg, Klein & Co., which it was understood had been assigned to Sonnentheil for the protection of a portion of the creditors of the firm. We are of the opinion that this evidence was sufficient at least to require the court to submit to the jury the question whether or not, by their act, the defendants had incited or induced the marshal to make the levy, or had aided in procuring it. Cabell v. Shoe Co., 81 Texas, 108.

It should be stated that, while the bond recites a levy already made, none in fact had taken place when it was executed, and as it does not direct or specify the kind of a levy that was contemplated, nor the property upon which it was to be made, appellees contend that its terms must be construed to have had reference to a levy that would be lawful, and not as inciting the marshal to do an unlawful act. As the instrument under which Sonnentheil held was only a mortgage, and the property was therefore subject to a levy made in subordination to the lien, by notice to the trustee, it is claimed that it was that kind of a levy that the obligors on the indemnity bond contemplated and became responsible for. The question in this case, however, is not one merely as to the proper construction of the terms of the bond, in order to ascertain the contractual obligation thereby assumed, but one of fact, whether or not defendants induced or incited the officer to make the levy, by acts intended or calculated to have that effect. In determining this, not only the terms of the bond itself, but all of the circumstances attending its execution and showing defendants' connection with the levy, are to be considered. And there certainly was evidence tending to show that it was made to induce a levy such as was made, if indeed its very terms, taken in connection with its delivery to the agent of the attaching creditor, with no restraint as to the use to be made of it, do not show a willingness to assume a responsibility for any levy which he might direct upon property as belonging to his debtor. Chapman v. Douglas, 5 Daly, 244. In order to dispose of the point now under consideration, it is enough to say, that the evidence was sufficient to require the submission of this issue to the jury.

It therefore becomes necessary to determine the questions presented by appellant concerning the rulings of the court in the submission and decision of the issue of fraud. It is not contended by appellees that the deed of trust contained any provisions which made it proper for the court, upon a mere inspection of it, to pronounce it void, though they claim that several of its features constitute badges or evidences of fraud, to be weighed and considered by the jury in connection with the other facts of the case. Their main contention is, that the deed was brought about by a fraudulent conspiracy between the members of the firm of Freiberg, Klein & Co. and L. Fellman, who was an accommodation indorser upon most of the preferred debts. That Freiberg, Klein & Co. owed the debts named in the deed is not controverted. The debts thus secured amounted to about $140,000,

and the liabilities of the firm, omitted from the deed, amounted to about as much more. Of the debts secured, Fellman was liable as accommodation indorser for all except $11,000 or $15,000 which were otherwise unsecured. Whether or not the property conveyed by the trust deed was more than reasonably sufficient to secure and pay the debts, was perhaps a debatable question under the evidence. Upon the execution of the deed, which included the entire stock in trade, notes, and accounts, the firm delivered possession of the property and suspended business.

Defendants alleged, and introduced evidence intended to prove, that nearly two years before the execution of the deed it was found that Freiberg, Klein & Co. were insolvent, and that they entered into a conspiracy with Fellman, who was then their indorser for a large amount, that they should continue in business by buying upon credit, and upon false representations as to their solvency build up their assets until they should have gotten themselves in a condition to best subserve their purposes, and then should fail, securing Fellman, and at the same time tying up their property so as to enable them to carry on business in Fellman's name, and extort a settlement from their creditors or secure to themselves the surplus; that this conspiracy had been carried out, and that the deed of trust was made in furtherance of it. There was evidence of a conveyance to Fellman, by the firm, of other property just before the mortgage was given, for which he paid the firm $10,000 in cash, and that this was done to induce them to execute the deed of trust; and still other evidence as to another deed of trust, executed on the same day with that in question, to secure a debt recited to be due to another party, but claimed by defendants to have been fictitious; and of many circumstances preceding, attending, and following the making of the conveyance in question, intended to sustain defendants' contention that it was a fraudulent contrivance between Freiberg, Klein & Co. and Fellman, in the guise of preference of the creditors named, to protect Fellman's indorsements, and at the same time secure to the makers the contemplated benefits. The plaintiff contends, that while there may have been an understanding, after the insolvency of the firm was known, that the firm should continue business, the evidence does not show that anything but legitimate business was intended or conducted, or that any wrong or fraud on other persons was purposed; that if any fraud was intended or perpetrated by Freiberg, Klein & Co., the evidence does not show that Fellman was a party to it, or knew of it; and that, even if Fellman were implicated in it, the plaintiff and the creditors whose debts were secured by the deed were not, and had no notice of it. It is not purposed here to state the evidence upon these contentions, nor even a full outline of it. Only enough need be stated to illustrate the nature of the issues made by the evidence, to which charges given and refused were addressed.

The court charged the jury, in substance, that plaintiff should recover unless the deed of trust was made to hinder or delay or defraud any of the creditors of Freiberg, Klein & Co.; but that, if "the deed of trust was intended to hinder or delay or defraud any of the creditors of Freiberg, Klein & Co., the marshal had the right to seize the goods."

The charge further instructed, that "an insolvent firm has a lawful right to make a deed of trust to prefer a creditor or creditors, although, as an incident, the effect would be to hinder or delay other creditors;" that such a deed would be valid, though its effect would be the defeat or delay of other just debts, "if made with no other intent than to secure bona fide creditors;" that unsecured creditors must suffer the loss of their just debts, unless they showed that such a deed "was intended to hinder or delay or defraud the unpreferred creditors," and the unpreferred creditors can not invalidate a trust deed preferring creditors by the mere fact that such a trust deed does in fact hinder or delay the unpreferred creditors, but to make a successful attack on such trust deed preferring creditors, it is necessary that the unpreferred creditors should cause you to believe from the evidence that the trust deed was made with intent to hinder or delay or defraud creditors."

These instructions make the validity of the deed depend upon the intent with which it was made, that is, the intent of Freiberg, Klein & Co., and do not require that either the trustee or the beneficiaries should have participated in or had notice of such intent. Some of the decisions which had not been overruled when this case was tried seem to state the law as it is expressed in the charge (Haas v. Kraus, 75 Texas, 106; Simon v. Ashe, 1 Texas Civil Appeals, 202); but it is settled law, that in order to avoid such a deed there must exist not only what the law denounces as a fraudulent intent on the part of the makers, but also notice of such intent upon the part of the creditors for whose benefit it was made. Shoe Co. v. Mars, 82 Texas, 493; Haas v. Kraus, 86 Texas, 687; Burnham v. Logan, 88 Texas, 1.

We also regard it as settled by these authorities, that though some of the beneficiaries may have had notice of a fraudulent intent on the part of the makers of the deed, if others accepted it without notice, they would be entitled to have it enforced for their own benefit, notwithstanding any fraud with which the others were chargeable. It clearly appears from the evidence that the deed was made as the result of an agreement between its makers and Fellman, and that, in so far as the securing of creditors entered into the transaction as one of its objects, protection to Fellman against his indorsements was the principal purpose for which it was executed. A few debts not secured by such indorsement were included incidentally, but the primary object of the conveyance was the protection of Fellman. We are of the opinion that Fellman, though not named in the deed, could under these circumstances accept it for his own benefit and enforce the exe-

cution of the trust created by its provisions. The security given for the debts for which he was responsible as surety, inured, if valid, to his benefit, and we think he could not be deprived of the protection which the deed was intended to afford by either the action or inaction of the holders of those claims. If, however, the deed was executed by Freiberg, Klein & Co. in fraud of their creditors, and Fellman participated in or had notice of such fraud, the trust could not be enforced for his benefit alone, and the question would then be whether or not the creditors named in the deed had secured such rights under it as to entitle plaintiff to recover for their benefit. If they had never accepted it nor become parties to it prior to the attachment, and it was fraudulent as between its makers and Fellman, there would seem to be no ground upon which plaintiff could enforce it by recovering in this action. If preferred creditors before the attachment was levied had accepted the deed, fraud in its execution between Freiberg, Klein & Co. and Fellman would not affect their rights under it, unless they had notice of the fraud, that is, of such circumstances as should have put a prudent man upon inquiry that would have led to a knowledge of the fraud.

It is further objected to the charge, that the several instructions above stated "were calculated to confuse the jury and leave them without means of distinguishing between an intent to hinder or delay in the execution of the deed of trust, and an intent that it should have its natural effect, which was to hinder and delay the unsecured creditors."

In the cases of Ellis v. Valentine, 65 Texas, 532, and Haas v. Kraus, 86 Texas, 687, the danger of misleading the jury by using the statutory words "hinder and delay," without further explanation, in defining the limits of the right to prefer creditors, is pointed out. The effect of a preference given by an insolvent to one creditor being ordinarily to hinder, delay, or defeat others, in the popular sense of those words, a jury, unless guarded against that error, may understand that the delay or hindrance which necessarily results from the preference is included within those obstructions which are prohibited by law.

The present charge, in the same sentence, informs the jury that the mere fact that a deed made to prefer creditors does hinder or delay other creditors does not avoid the conveyance, but that an intent to hinder or delay or defraud creditors does avoid it. The chief fault in such instructions as this is, that they are too abstract, and do not sufficiently explain to the jury the character of the acts or results which are to be considered unlawful hindrances or delays. In one branch of the rule stated in the charge, the words hinder and delay are used in one sense, and in the other branch they are used in a different sense. If the same meaning is attached to them in both instances, the substance of the instruction is, that if the deed had a certain effect it

would not be void, but if the makers intended that it should have that effect, it would be void.

The court evidently intended to convey the idea that the makers of the deed must have intended something else which would operate as a delay or hindrance of their creditors besides that which would be caused by the mere carrying into effect of lawful provisions in the conveyance. The charge, however, may just as well be interpreted to mean, that while mere delay incident to the execution of a trust created to prefer creditors would not of itself render the transaction void, yet if the debtor intended that same delay, such intention would vitiate it. But this not the law. This does not make the proper distinction between an obstruction which is unlawful and one which is lawful. If the delay which the deed in its operation will necessarily cause is an unlawful delay, the deed must be unlawful, for the parties will be held to intend that which the necessary operation of the deed would cause. On the other hand, if such delay is not of the kind prohibited, the intent that it shall occur is not an unlawful intent, and hence would not affect the validity of the deed.

A debtor in making a preference may intend other consequences than the mere payment or securing of the creditor, such as are prohibited by the statute, as hindrances or delays or frauds of or upon other creditors; and such an intent known to the preferred creditors would render a conveyance by which it was sought to be carried into effect fraudulent. What the other things intended in given cases are, the evidence should indicate, and with reference to the evidence in the particular case, it is the province of the court to inform the jury what would and what would not be the hindrance, the delay, or the fraud, the intent to effect which would avoid the transaction.

In cases where the evidence tends to show both an intent to prefer, and behind that an intent to interpose unlawful hindrances or delays, or to perpetrate frauds in connection with the preference, it is difficult, if not impracticable, to give to the jury the whole law upon the subject in the form of abstract rules expressed merely in the language of the statute, which may not confuse them.

It is not intended to intimate, however, that mere generality of language in the charge would of itself be such error as to lead to a reversal, but only to point out what seems to us the difficulty of intelligibly submitting such cases as this to the jury by abstract rules in which the same language is continually used in more than one sense.

Plaintiff asked the following special charge: "I charge you that a debtor, however insolvent, has a perfect right to prefer one or more bona fide creditors over all others, and the mere fact that such preference is given will not avoid an instrument made for that purpose, though such insolvency was well known at the time to the preferred creditors, and they also knew that the effect and the intention of such instrument was to hinder, delay, and defeat a portion of the maker's

creditors in order to give a preference to those protected by the instrument.''

The greater part of it is contained in the general charge, but the latter part we think might be misleading to the jury. If the intent of the makers of the deed and knowledge thereof by the creditors, as referred to in the charge, means an intent to hinder, delay, or defeat other creditors, only as the mere giving of the preference and the collection of their debts by the preferred creditors in good faith out of the property conveyed would have that effect, the charge is correct. But the jury might naturally understand such an instruction as protecting the beneficiaries against knowledge of any further intent of the kind mentioned, because they were creditors, and the deed was made partly to prefer them. Without some qualification to guard them against thus misunderstanding it, the instruction should not be given.

The rule stated in the third special charge is correct, as is virtually held above, but as it was not claimed that any of the preferred debts were fictitious, we do not see that it was necessary to give it.

The fourth special charge was correct, and should have been given. It was as follows: ''I charge you, the fact that a debt secured by a deed of trust is also secured by personal indorsement, does not affect the right of the owner of such debt to the benefits of the deed, and the same may be enforced and carried out for the benefit of such creditors, regardless of any personal security he may hold for the same; and he is not affected by any fraud committed by any other creditor secured by said deed, or even by the party whom he holds as an indorser upon his claim, when he had notice of such fraud, or reasonable cause to suspect it, at or before the execution of the deed.''

The fifth requested charge was in the main correct, but in the absence of some explanation of its terms in the general charge, needs some qualification. It is as follows: ''If you believe from the evidence that Freiberg, Klein & Co. executed the deed of trust in question in the case for the purpose of preferring the creditors mentioned in the same, and the debts thus preferred were bona fine debts of said firm, and neither the holders of the same or the trustee in said deed of trust had any notice of any fraud perpetrated by means of said deed, the plaintiff is entitled to a verdict, though the intention of said instrument was fraudulent on the part of Freiberg, Klein & Co.; and he is also entitled to a verdict, though some of the creditors preferred in said deed were chargeable with notice of such fraud, if the others were not thus chargeable; and I charge you further, that the deed is not void for fraud, if any, as to the claims upon which Fellman was security, if the holders of such claims had no notice of such fraud, and knowledge by such holders that Freiberg, Klein & Co. were insolvent, and that the deed was made to hinder, delay, or defeat creditors, would not avoid said deed as to such claims.''

The last clause of it needs to be explained in the same way as above indicated with regard to the third. Whether or not notice on

the part of the beneficiaries of the deed of a purpose on the part of Freiberg, Klein & Co. to hinder, delay, or defeat their creditors would defeat their claim under the deed depends, as before explained, upon the character of the obstructions or obstacles by which such hindrance or delay was intended to be accomplished.

When there exists what is properly to be called a fraudulent intent on the part of the debtor, we do not agree that it is the right of the creditor to aid in executing it, by accepting a mortgage given with that purpose. If the conveyance which the debtor purposes is no more than the law permits him to do in preferring a creditor, and hence can not operate a legal wrong to other creditors, a bad motive with which it is done does not constitute the fraudulent intent denounced by the statute. Notice to the creditor of such a motive in such a conveyance is therefore not notice of a fraudulent intent. Ellis v. Valentine, and Haas v. Kraus, supra. But in this case, the evidence raises questions as to the existence of the true fraudulent intent, and a charge which may lead the jury to confuse it with the intent which does not avoid a lawful preference should not be given.

It is to be remarked, however, that these charges are here treated upon the assumption that the preferred creditors, to whom they apply, accepted the deed before the attachment. If the pleading and evidence on another trial should raise an issue as to that fact, of course instructions such as these should be given subject to its decision.

The other instructions, the refusal of which is assigned as error, have been carefully considered, and without discussing them in detail, we think their refusal was not error.

There are several bills of exceptions in the record, upon which assignments are based, complaining of the admission of evidence. The evidence set out as objectionable includes many of the statements made by the witness, no particular part being specified, and in passing upon the assignments we do not deem it necessary to decide that everything that was stated in the parts of the testimony set out in the bill of exceptions was admissible, as the nature of the objection urged does not call for so minute an examination of the evidence as this would require. The objection urged in the brief to the evidence stated in the bills of exception numbers 1 and 2 is, that transactions between members of the firm of Freiberg, Klein & Co. and other persons were not admissible against the beneficiaries of the deed or the trustee, unless same had been brought to their knowledge and shown to have entered into or affected the deed or its scope or operation. The defendant's theory was, that the deed was brought about by a fraudulent conspiracy, and any evidence tending to show its existence, as well as who were the parties to it, its nature, scope, and purpose was admissible. When evidence had been introduced tending to show the existence of such conspiracy, the acts of all parties to it while it was pending, in furtherance of its purposes, was admissible. It was also a proper inquiry, apart from the charge of conspiracy, whether or not

Freiberg, Klein & Co. had conceived the purpose of defrauding their creditors, and all of their acts and transactions tending to show such purpose were relevant.

It was unnecessary that the other parties be shown to have known of each of the facts introduced for the purpose of establishing the fraud or the conspiracy. Those facts were proper to be considered in determining whether or not there was a fraud intended or perpetrated. Notice to the other parties of such fraud could be shown by other and different facts. As to whether or not the several transactions objected to did prove fraud or conspiracy, or illustrated a purpose which entered into or affected the deed, were questions for the jury to determine after the evidence was all in. Linn v. Wright, 18 Texas, 317.

Upon the same principles, the evidence as to the acts and dealings of the persons charged to have been parties to the fraud is not necessarily restricted to such as took place before the deed was executed. It is true that the validity of the deed depends upon the facts, and especially upon the intent of the parties to it when it was made and accepted by the beneficiaries; and if it was valid then it could not be rendered invalid by the subsequent acts of the makers of the deed or of third parties. But the acts of the parties subsequent to the making of the deed, and especially their connection and dealings with the property and with each other, might tend to show what their purposes had been in the execution of the conveyance. The contention of defendants was, that the conspiracy embraced within its scope not only the making of the deed, but the subsequent attainment, under its protection, of other objects. The acts of the parties tending to establish this was admissible, whether transpiring before or after the deed was made, and their weight was for the jury. Eames v. Kaiser, 142 U. S., 488, 492.

The judgment is reversed because of the errors in the charge, and in refusing special charges.

*Reversed and remanded.*

Delivered April 11, 1895.