## McCRAY v. KELLY et al.

### No. 10825.

Court of Civil Appeals of Texas. Galveston.

June 8, 1939.

Rehearing Denied July 6, 1939.

A. W. Marshall, of Anahuac, for appellant.

Charles T. Butler, of Beaumont (Butler & Walker and William T. Butler, all of Beaumont, of counsel), for appellees.

GRAVES, Justice.

This general statement, admittedly correct as such, is taken from appellant's brief: "This suit was one brought in tres-

pass to try title and involves a small tract of land in the E. T. Branch Survey in Chambers County, Texas, described in plaintiffs' original petition. It was instituted by Clara W. Kelly and husband, F. A. Kelly, against William McCray and A. R. Banks. A. R. Banks filed a disclaimer and is no longer involved. The defendant, William McCray, answered by general denial, plea of not guilty and also specially pled a rental-contract executed by the appellees to the appellants, under which he held possession. This written contract and his claimed compliance therewith was the defense to the suit by appellant. Trial was had before the court, and judgment rendered that the appellees recover the premises, and that the rental-contract be canceled by reason of non-compliance therewith by appellant. At the request of the appellant, the trial court filed its findings of fact and conclusions of law. It was undisputed that the appellees, Clara W. Kelly et al., were the owners of the property, subject to the lease-contract entered into between appellees and appellant."

There is no Statement of Facts, appellant coming here upon a transcript only, which includes the stated findings below, to which he filed no objection nor exception, they being substantially as follows:

"Findings of Fact.

"I find that on October 9, 1935, Clara W. Kelly and F. A. Kelly entered into a contract with William McCray as follows:

" 'The State of Texas County of Chambers.

" 'This memorandum of lease made and entered this day between F. A. Kelly and wife, Clara Kelly, parties of the first part, and William McCray, party of the second part, Witnesseth:

" 'That the parties of the first part hereby lease and rent unto the party of the second part for a period of one year from the date hereof, that certain tract and parcel of land being a part of the E. T. Branch Survey located on the South Bayshore at Smith Point, and being out of and a part of that certain 10 acres of land owned by parties of the first part, and the land herein is described as follows * * *

" 'And the parties of the first part hereby reserve the right of ingress and egress for themselves and their guests at all times for the purpose of going into and on the property herein reserved.

" " This lease is not transferrable by parties of the second part except by consent of parties of the first part.

" 'It is understood and agreed that at the expiration of this lease, the said parties of the second part have the right and option of renewing said lease upon the said terms and conditions for a further period of four years from the date thereof.

" 'The consideration of this lease is for the sum of Ten Dollars per month during the term of this lease, and it is further provided that if said rental becomes delinquent for as much as three months, then, and in that event, this lease shall become null and void and shall revert immediately to the parties of the first part, together with all the improvements thereon located and being.

" 'It is further understood and agreed that the parties of the second part shall erect at least four cabins on said premises and keep same in good repair and condition. And at the expiration of this lease, whether it be at the end of the one year period, or if extended, at the four additional years period, all improvements erected thereon on said premises shall remain on said premises and shall become the property of the parties of the first part.

" 'Witness our hands this 9th day of October, A. D. 1935.

" 'Signed: Clara Kelly
" 'Signed: F. A. Kelly
" 'Signed: William McCray.'

"I further find that under said contract the first month's rental of $10.00 was remitted by the said Clara W. Kelly and F. A. Kelly, and I further find that the sum of $75.00 was paid on rental of said contract the first year thereof, and that same was accepted by the said Clara W. Kelly and F. A. Kelly, which paid the rental under said contract up to June 24, 1936. I further find that said rental was a monthly rental of $10.00 per month payable at the end of each month, and I further find that said rentals were not paid promptly at the end of each month but that same, at all times, were delinquent.

"I further find that the rentals paid and accepted during the first year were at no time sufficient to pay up to date the rentals then due. I further find that such rentals were paid at different times in small amounts of $1.25, $2.50, and $5.00, but at no time was said rent ever paid in full and up to date under said contract.

"I further find that on July 6, 1936, payment of $5.00 was made by cashier's check on said contract and accepted by the said Kellys.

"I further find that on July 22, 1936, the sum of $5.00 was paid to Mrs. Clara W. Kelly and F. A. Kelly by cashier's check and accepted.

"I find that on August 24, 1936, the sum of $5.00 was paid by cashier's check and accepted, and that on said payment, by draft, the notation specified, 'rent from June 9, 1936, to June 24, 1936.'

"I further find that no other payments were made and that on September 22, 1936, the said defendant, William McCray, placed in the postoffice at Port Arthur, Texas, a bank cashier's check of the First National Bank of Port Arthur, Texas, for the sum of $5.00 written thereon, 'lease rent from June 24, 1936, to July 9, 1936.' That this check was sent to Smith Point, Texas, and received by the said Kellys on the 29th day of September, 1936, in Beaumont, Texas.

"I further find that a bank cashier's check for the sum of $10.00 was sent from Port Arthur on September 28, 1936.

"I find that on October 1, 1936, the said William McCray sent a check for the sum of $20.00, being a cashier's check, on the Security State Bank of Anahuac, Texas.

"I further find that said check of $5.00 dated September 22, 1936, and said check of September 28, 1936, and said check of October 1, 1936, was, on October 5, 1936, returned by the said Clara W. Kelly and F. A. Kelly to William McCray as follows:

" 'Beaumont, Texas.
" 'October 5, 1936.
" 'Mr. W. H. McCray,
" 'Smith's Point, Chambers County, Texas.,
" 'Dear Sir:
" 'The undersigned are in receipt of your letter of October 1, 1936, with enclosures.
" 'As we have heretofore advised you we do not recognize that you have any rights of whatsoever character under the lease contract between us dated October 9, 1935, and we repeat our demand that you immediately vacate the premises described in said lease.
" 'We are returning you herewith the following, all of which were enclosed in your letter of October 1, 1936, viz.:
" '(1) Bank money order for $5.00 dated September 22, 1936, payable to Mrs. F. A.

Kelly, issued by the First National Bank of Port Arthur, being bank money order No. 1117 of said bank. This is the second time we have returned this bank money order to you.

" '(2) Bank money order No. 1141, issued by the First National Bank of Port Arthur, payable to Mrs. F. A. Kelly, for the sum of $10.00, dated 9-28-36.

" '(3) Cashier's check No. 6573 of the Security State Bank of Anahuac, Texas, dated October 1, 1936, for the sum of $20.00, payable to Mrs. F. A. Kelly.

" 'It is useless for you to mail us any further checks or make any further tenders of any sums of money under the lease contract dated October 9, 1935, as such further checks and tenders will be refused if made.

" 'We note from your letter of October 1st that you attempt to exercise the option written in the lease between us dated October 9, 1935, covering possession of the premises described in said lease for an additional period of four years. We refuse to recognize your right to exercise said option, and again repeat that we do not recognize that you have any rights whatsoever under the lease dated October 9, 1935, and we will govern ourselves accordingly.

" 'Very truly yours,
" 'Signed: F. A. Kelly
" 'Signed: Mrs. Clara Kelly.
" 'Enclosures
" 'Registered, R. R. R.'

"I further find that the option provided for in said lease giving the said William McCray the option of keeping said place for four additional years was exercised on October 1, 1936, by the following letter:

" 'Mr. F. A. Kelly and wife Clara Kelly
" '1407 Live Oak St., Beaumont, Texas.
" 'Dear Mr. and Mrs. Kelly:
" 'I am herewith inclosing you a money order for Twenty Dollars ($20.00) which together with the money order for Five Dollars, constitutes payment of my rent in full on the property at Smith Point leased from you up to October 9th, 1936.

" 'I sent you a draft a few days ago for Ten Dollars ($10.00).

" 'This is also to advise you that in accordance with our contract and agreement that the expiration of the lease given for one year ending October 9th, 1936, I should have the right and option of renewing said lease upon the said terms and conditions for a period of four years from the date thereof, I am now exercising that option

and advise you that I shall keep the place under the terms of said lease for an additional four years in accordance with the terms thereof.

" 'I have complied in every way with the terms of said lease and erected four cabins thereon and kept the same in good condition, and I am exercising my right and option to renew said lease for a term of four years from the date thereof.

" 'Given under my hand this 1st day of October, 1936.

" 'Signed: W. H. McCray.'

"I further find that on September 28, 1936, a cashier's check on the First National Bank of Port Arthur, Texas, for $10.00 was mailed to the said Kellys.

"I find further that on October 1, 1936, a check for $20.00 was mailed to the said Kellys and on October 8, 1936, a check for $10.00 was mailed to the said Kellys and that each of these cashier's checks were returned to the said William McCray with a letter and notation that they were refused for the reason that said contract had become null and void and forfeited.

\* \* \*

"I further find that at no time during the first year of said lease contract were the rents, provided for therein, ever paid in full at the end of each month.

"I further find that there was no evidence as to the rental value and damages as alleged by the plaintiff in said cause \* \* \*.

"Conclusions of Law.

"From the above facts, my conclusion is that the proper tender of lease moneys due was never made for the reason that such tenders were by cashier's bank-check and not in money.

"I further reached the conclusion that said tenders were not legal tenders which had to be accepted by the said Kellys, because at no time during the first year were tenders ever payments in full as provided for in said contract.

"I further find that the said Clara W. Kelly and F. A. Kelly were not estopped from denying payments by virtue of refusing acceptance of the bank's cashier's check for the reason that the said William McCray, in his pleadings, did not plead estoppel.

"I further conclude that the said Clara W. Kelly and F. A. Kelly should have judgment cancelling the lease contract, but that the said Clara W. Kelly and F. A. Kelly should not have and recover any rentals or damages in said suit, and judgment is so entered.

"Thos. B. Coe,
"Judge, \* \* \*"

In his five assignments, in different forms, appellant's contentions get down to essentially the same ultimate one, to this effect: that the denial of a recovery to him was erroneous, because (1) the appellees were under the legal obligation of accepting his tendered cashier's checks as payment of rental for the three periods reflected in the findings—that is, the $5 one of September 22, 1936, as for rental from June 24 to July 9; that for $10 of September 28, 1936, as for rental from July 9 to August 9; and that of October 1, 1936, for $20, as for rental to October 9, 1936; and (2) such tenders were legally sufficient to both prevent any default in rentals under the lease and avert a forfeiture thereof.

This deduction, in turn, rests upon the further assertion that the appellees had become legally estopped from refusing to accept the three above enumerated checks, with the stated effect entailed, because they had previously, in a few instances, accepted like checks from him in small amounts (less than the full rental he owed at those times), hence such conduct on their part had raised the asserted estoppel in his favor.

■ This court cannot see eye to eye with him in this position; on the contrary, the quoted findings, being unattacked, are not only binding upon it, but further, in its opinion, fully support, if indeed they did not require, the judgment rendered; Buckholts State Bank v. Harris, Tex.Civ.App., 194 S.W. 961; Industrial Transp. Co. v. White, Tex.Civ.App., 240 S.W. 1054; Accidental Oil Mills v. Shoemake, Tex.Civ.App., 254 S.W. 385; Crenshaw v. Chambers, Tex.Civ.App., 283 S.W. 1095; Chandler v. Harrison, Tex.Civ.App., 4 S.W.2d 604; Wheeler Motor Sales Co. v. Guerguin, Tex.Civ.App., 16 S.W.2d 309; Brown Shoe Co. v. Shor, Tex.Civ.App., 56 S.W. 2d 466; Big Spring M. Aid v. Moore, Tex. Civ.App., 62 S.W.2d 387; Jowell v. Billingsley, Tex.Civ.App., 66 S.W.2d 809; 3 Tex.Jur., par. 391, page 557.

■ Without reiterating them further, these controlling ones of the stated findings are clearly thought to have entailed the stated consequences: (1) Appellant was in default for more than three months in the

payment of rentals both at the time he sent the $20 check on October 1 of 1936, and on the 9th thereafter when appellees elected to so declare his rights under the lease forfeited; (2) he had never paid rentals the appellees had accepted beyond the date of June 24 of 1936, hence the rentals having been monthly ones payable at the end of each month, they were not paid promptly when due, but were at all times during the first year of the lease delinquent; (3) all tenders subsequent to June 24 of 1936 were refused and returned to appellant; (4) none of the subsequent tenders so made, refused, and returned, were in full of the amounts then due, hence they were not legal tenders requiring acceptance.

It follows as night the day, it is thought, that if appellees were thus not estopped from refusing the certified checks, the appellant indisputably was in default for more than three months on the payments of the stipulated rental, when they so elected to declare his contractual rights forfeited; in the absence of estoppel, they had that express right by the terms of the lease.

 Appellant earnestly contends that, in an action of trespass to try title like this was, the defense of estoppel may be asserted under the general denial and plea of not guilty, but at most that would be a mere abstraction as applied to the facts so found here; this for the reason that nothing shown by the facts in this record amounted to an estoppel, equitable or otherwise. Since this lease contained the recited automatic forfeiture-clause upon default in the payment of the rentals, no election to declare it forfeited was required of the appellees, (27 Tex.Jur., page 91, par. 31; Crawford v. Texas Imp. Co., Tex.Civ.App., 196 S.W. 195; Limestone County v. Peeples, Tex.Civ.App., 285 S.W. 696), nor did their mere indulgence in having allowed the rents in a few instances to become due prior thereto constitute any proof of an election to waive that forfeiture-right, Crawford v. Texas Imp. Co., supra.

 No estoppel resulted, it is determined, for at least two other reasons:

(1) The relied-upon tenders must have been of the full amounts due from the appellant to the appellees at the dates thereof to have been valid as such, which was not the case in any of the three instances: City of San Antonio v. Campbell, Tex. Civ.App., 56 S.W. 130; Stuard v. Thompson, Tex.Civ.App., 251 S.W. 277; Taylor v. Hemphill, Tex.Civ.App., 238 S.W. 986, 987; Stern v. Maxwell, Tex.Civ.App., 44 S.W.2d 482, 487; 62 Corpus Juris, page 660; 40 Tex.Jur., page 843, par. 6; Young v. Jones, Tex.Civ.App., 222 S.W. 691; Dawson v. Falfurrias, Tex.Civ.App., 181 S.W. 553; Shipp v. Anderson, Tex.Civ. App., 173 S.W. 598.

(2) Money was called for in this lease, there was absent any agreement to the contrary, hence these claimed tenders, being in cashier's-checks of a bank only, were insufficient as legal tenders: 40 Tex. Jur., par. 7, page 844; Niagara Fire Ins. Co. v. Mitchell, Tex.Civ.App., 164 S.W. 919; Stern v. Maxwell, Tex.Civ.App., 44 S.W.2d 482.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.